UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRETT PHELPS, | ) | Case No. 5:04 CV 2490 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | (Resolving ECF# 45) |
| THE CITY OF AKRON, et al., | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Plaintiff Brett Phelps (Phelps)  filed this lawsuit under 42 U.S.C. §1983 against the City of Akron and officers in its police department including Officer D. Pickett alleging violation of his Fourth and Eighth Amendment rights to be free from excessive force, his Fourth Amendment right to be free from unlawful seizure and his Fourteenth Amendment right to due process and equal protection of the law.  Plaintiff alleges he was beaten and attacked by Akron Police Officer  Pickett after he was arrested on November 20, 2002 for possession of drug paraphernalia.

Defendants have moved for summary judgment (ECF #45).        Under Rule 56 of the Federal Rules of Civil Procedure, granting a motion for summary judgment is only proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether there is a genuine issue of material fact all inferences drawn from the underlying facts contained in affidavits, pleadings, responses to discovery requests, and depositions must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  A court

5:04 CV 2490                                    2

must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The court may not make credibility determinations or weigh the evidence when ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255.  The burden is upon the movant to demonstrate the absence of a genuine issue of material fact.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979), *cert. dismissed* 444 U.S. 986 (1979).  However, the nonmoving party is obliged to produce some evidence other than mere pleadings themselves to demonstrate that there is a genuine issue for trial.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   The nonmoving party must produce significant probative evidence in support of the complaint to defeat the motion for summary judgment through affidavits or admissions on file.  *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  In the final analysis, "the threshold inquiry . . . [is] whether there is a need for trial -- whether in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *Moore*, 8 F.3d at 340.  Once the nonmoving party has responded , the court must view the facts in the light most favorable to the nonmoving party. *Darrah v. City of Oak Park,* 255 F.3d 301, 304 n.1 (6th Cir. 2001).


        The facts surrounding Phelps' arrest are disputed but it is agreed that Officer Pickett stopped Phelps and instructed him to put his hands behind his back in order to conduct a *Terry* stop frisk for

5:04 CV 2490                                      3

weapons.[1]  During the frisk Officer Pickett felt a metal object in Phelps' pocket which he determined was a marijuana pipe.  Phelps was placed under arrest with his arms behind his back in handcuffs in a double-locked position and led to an Akron police cruiser.  Subsequently backup units arrived. While Officer Pickett completed the summons for possession of drug paraphernalia, Phelps complained of shoulder pain and Officer Pickett removed the handcuffs and issued Phelps the summons.

On December 17, 2002 Phelps, represented by counsel, pled no contest to the possession of drug paraphernalia charge and was found guilty by the Akron Municipal Court.  After being sentenced, Phelps completed a citizen's complaint form against Officer Pickett and patrol operations assigned Sergeant Simcox to investigate the complaint.  The complaint had three components: Phelps was handcuffed and not read his Miranda warnings; Officer Pickett injured Phelps' left shoulder and Officer Pickett threatened to arrest Phelps and put him in jail.  Sergeant Simcox investigated the matter and found the citizen's complaint was unsubstantiated.  Sgt. Simcox concluded the alleged injury to the left shoulder was unsubstantiated because there was no evidence to support the claim; and that there was a 27-day delay in making the complaint, which Sergeant Simcox claimed made it impossible to determine if Phelps was ever injured or when he might have been injured (Simcox Aff. ¶8).  Sergeant Simcox found that Officer Pickett did not violate the rules or regulations of the Akron Police Department in failing to provide Miranda warnings and that if

---

[1] *Terry v. Ohio*, 392 U.S. 1, 22-23, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (no Fourth Amendment violation in patting down clothing under reasonable suspicion standard warranting an officer of reasonable caution and belief that action taken to search for weapons was appropriate).

5:04 CV 2490                                   4

Officer Pickett was intent on taking Phelps to jail, as alleged, then Officer Pickett easily could have done that instead of issuing the summons (Simcox Aff. ¶8). Phelps, immediately following arrest, did seek medical treatment at Akron General Medical Center and was diagnosed with a shoulder strain (Phelps Dep. pg. 71, Phelps Aff. ¶12). That was the only documented injury.

*Alleged Unreasonable Stop and Lack of Probable Cause to Arrest and Malicious Prosecution:*

Phelps alleges that he was unlawfully stopped, seized and placed under arrest (Complaint ¶8) and complains that this action infringed on his Fourth Amendment right to be free from unlawful seizure (Complaint ¶23). It is well established that the Fourth Amendment requires probable cause for an arrest. See *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003); *Lyons v. City of Xenia,* 417 F.3d 565, 573 (6th Cir. 2005). Phelps complains of unlawful stop and arrest, and a claim for wrongful arrest turns on whether the officer had probable cause. See *Donovan v. Thames*, 105 F.3d 291, 297-99 (6th Cir. 1997) (arrest without probable cause violates Fourth Amendment); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Darrah v. City of Oak Park*, 255 F.3d at 312 quoting *Pyles v. Raisor*, 60 F.3d at 1215 and see *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

Plaintiff and defendant take divergent views in their arguments. Defendants rely primarily on *Heck v. Humphrey*, 512 U.S. 472, 114 S.Ct. 2364, 120 L.Ed.2d 383 (1994), which was based on

5:04 CV 2490                                         5

principles of exhaustion of state remedies.  *Id.*, 512 U.S. at 481.  Although confronting only a

malicious prosecution claim, the Supreme Court issued a sweeping holding that, "in order to recover

damages for allegedly unconstitutional conviction or imprisonment, or for the harm caused by action

whose lawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that

the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared

invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas

corpus (footnote omitted).  *Id.*, 512 U.S. at 46-87.  On the other hand, Phelps relies on cases

developed from *Haring v. Prosise*, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983) which

requires preclusive effect be given to state court criminal judgments and explains the constraints on

the federal effect when a defendant did have a full and fair opportunity to litigate a claim or issue.

*Heck* and issue preclusion overlapped, and just as in matters of issue preclusion, "the district court

must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity

of his conviction or sentence."  *Heck*, 512 U.S. at 487.  This overlap between exhaustion and issue

preclusion  becomes even more clear when stated in the converse that "If 'the plaintiff's action, even

if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the

plaintiff, the [§1983] action should be allowed to proceed, in the absence of some other bar to suit.'"

*Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005), quoting *Heck*, 512 U.S. at 487.


        However, even under the concept of issue preclusion (as argued by Phelps), it has been long

established in the Sixth Circuit that a no contest plea entered in an Ohio court and resulting in a state

court guilty verdict is given issue preclusive effect to estop plaintiff from asserting in federal court

that defendant police officers acted without probable cause in arresting and imprisoning him in an

5:04 CV 2490                                    6

action brought under §1983.  See *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988).  The Sixth

Circuit very clearly stated:

> We hold that the pleas in state court made by defendants (sic) and the finding
> of guilt and imposition of fines by that court estop plaintiffs from now
> asserting in federal court that the defendant police officers acted without
> probable cause.

*Id.*

It is absolutely clear that *Haring* prohibits Phelps' claim that he was arrested and "seized"

without probable cause.


Phelps also is prevented under issue preclusion and *Heck* from challenging Officer Pickett's

initial stop and frisk.   Investigative stops or "*Terry* stops" are permitted under the Fourth

Amendment when less than probable cause is present but when "specific and articulable facts"

support a reasonable suspicion that the individual has engaged or is about to engage in criminal

activity.  *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  Liberally construing

Phelps' arguments, he claims the facts did not warrant making the initial *Terry* stop let alone

probable cause for arrest or that probable cause developed from the initial unlawful *Terry* stop.

However, either theory places probable cause to arrest in jeopardy.  Moreover, in a §1983 action the

"fruit of the poisonous tree doctrine" does not apply to exclude evidence in §1983 cases and

accordingly the lack of probable cause to stop and search does not vitiate probable cause to arrest.

*Townes v. City of New York*, 176 F.3d 138, 145-46 (2nd Cir. 1999); *Clynch v. Chapman*, 285

F.Supp.2d 213, 225 (D. Conn. 2003); *Liston v. Steffes*, 300 F.Supp.2d 742, 750 (W.D. Wisc. 2002).

(If plaintiffs were convicted of a crime arising out the arrests and their conviction, their convictions

5:04 CV 2490                                    7

would be put into doubt if this court were to decide that the initial stop of their car, the search of the car or the administration of a preliminary breath test was illegal, that challenge would be barred by *Heck v. Humphrey*).[2]

Phelps' allegation that Officer Pickett threatened to arrest him several times, even assuming it to be true, is immaterial because threats alone cannot support a constitutional claim.  *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003); *Emmons v. McLaughlin*, 874 F.2d 351, 353-54 (6th Cir. 1989).

Phelps also raises what he denominates as a wrongful prosecution claim.  Presumably he means a malicious prosecution claim.  Such a claim has been recognized with murky contours under the Fourth Amendment.  See *Darrah v. City of Oak Park*, 255 F.3d at 308-10; *Thacker v. City of Columbus*, 328 F.3d 244, 258 (6th Cir. 2003).  Although the Sixth Circuit has not yet resolved the elements of a federal malicious prosecution claim, plaintiff must show "at a minimum 'that there was no probable cause to justify [his] arrest and prosecution.'" *Thacker*, 328 F.3d at 259 quoting *Darrah*, 255 F.3d at 312.  Consequently this claim is barred by *Walker* and *Heck v. Humphrey*.  As explained in *Heck*, a malicious prosecution claim cannot be raised under §1983 while a conviction is extant because one of the elements of this claim is "termination of the prior criminal proceeding

---

[2] Further, Officer Pickett's brief detention of Phelps even though handcuffed could under the circumstances arguably constitute part of the *Terry* stop and not arrest.  See *U.S. v Long*, - F.3d. -, 2006 WL 2795053 *6 n. 2 (6th Cir. 2006); *Smoak v. Hall*, 460 F.3d 768, 781 (6th Cir. 2006) ("although the use of guns, handcuffs, and detention in a police cruiser do not automatically transform a *Terry* stop into an arrest, these displays of force must be warranted by the circumstances.)"

5:04 CV 2490                                                    8

in favor of the accused." *Heck*, 512 U.S. at 484-85.  Note 4 of *Heck* goes on to reconcile case law

concerning malicious prosecution including that "the presumption of probable cause arising from

a conviction can be rebutted only by showing that the conviction had been obtained by some type

of fraud." *Heck*, 512 U.S. at 485 n. 4.  Phelps does not raise any allegations of fraud upon the court,

and consequently he could not now controvert probable cause for arrest which would imply the

invalidity of his state court conviction.  Accordingly summary judgment for defendants is to be

entered in favor of defendants on Phelps' claims of violation of his Fourth Amendment right to be

free from unlawful seizure.


*Unlawful Search:*

        Defendants introduce a new issue of unreasonable search (motion for summary judgment at

pages vi-vii, 4-9, ECF#45).  As instructed in *Cummings v. City of Akron*, under the "course of the

proceedings" test this new claim is deemed to be part of the complaint even though no such

allegation was raised.  See *id.* 418 F.3d at 681-82.  Note 7 in *Heck* states, "A suit for damages

attributable to an allegedly unreasonable search may lie even if the challenged search produced

evidence that was introduced in a state criminal trial resulting in . . . conviction." *Heck*, 512 U.S.

487 n. 7.  However, Note 7 explains there are two caveats.  First, the §1983 action must "not

*necessarily* imply that the plaintiff's conviction was unlawful," and secondly, plaintiff must prove

that not only that the search was unlawful but it caused "actual, compensable injury" apart from

conviction and imprisonment. *Id.*  And see *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 395-98 (6th Cir.

1999); *Brindley v. Best*, 192 F.3d 525, 530-31 (6th Cir. 1999), and see *Braxton v. Scott*, 905 F.Supp.

455, 458-59 (N.D. Ohio 1995).  Phelps points out that there was no suppression hearing related to

5:04 CV 2490                                    9

his no contest plea and therefore issue preclusion would not apply.  See *Brindley*, 192 F.3d at 530-31.

This point, however, fails because in Phelps' effort to take advantage of the situation presented by defendants is defeated by Phelps' effort to imply unlawful conviction contrary to the first caveat because he argues that he used the pipe to smoke tobacco and there was no illegal substance residue (Plaintiff's Opposition pg. 6 ECF#53).  Further the second caveat of actual compensable injury is lacking, obviously, because plaintiff alleged no "actual compensable" injury apart from a conviction since he did not raise an illegal search claim uncovering the marijuana pipe in the complaint.  Accordingly, summary judgment for defendants is to be entered on Phelps' claim of unlawful seizure of the marijuana pipe.

*Unreasonable and Excessive Force:*

As a pretrial detainee, Phelps' claims are properly analyzed under the Fourth Amendment's "objective reasonableness" standard.  See *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005); *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

In evaluating the officer's conduct, the court looks to (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  *Lyons* at 575; *Graham*, 490 U.S. at 396.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment."  *Id.*  (citation and quotations omitted).

5:04 CV 2490                                               10

However, "[]he right to make an arrest or investigative stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 citing *Terry v. Ohio*, 382 U.S. at 22-27.

Under *Graham*, the court must determine whether the reasonableness of the officer's use of force by performing a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governing interest at stake." 490 U.S. at 396.  (internal quotation marks omitted).  However, *de minimus* injury alone is not a basis for rejecting an excessive force claim on legal principles.  See *Ingram v. City of Columbus*, 185 F.3d 579, 597 (6th Cir. 1999); *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996) (excessive force claimed where plaintiff alleged that officers used excessive force in removing her wedding ring).  Thus "a victim of police brutality may recover under §1983 for 'emotional harm [that] can often be quite difficult to measure in mere monetary terms.'" *Ingram*, 185 F.3d at 597 quoting *Holmes*, 78 F.3d at 1048.[3]

Phelps alleges in his complaint that after he was stopped and arrested he was "willfully and maliciously beat (sic) and attacked . . . without any legal cause or justification."  (Complaint ¶9, ECF#1).  He further claims that other unidentified officers participated in this attack by Officer

---

[3] Defendants' reliance on *Brown v. Kordis*, 46 Fed. Appx. 315 (6th Cir. 2002) is misplaced. In this unpublished decision the court erred in applying 14th Amendment concepts of prison negligence to "pretrial detainee" claim of excessive force which is governed by *Graham*, not *Daniels v. Williams*, 474 U.S. 327 (1986).

5:04 CV 2490                                                11

Pickett causing him "serious and severe physical injuries that required immediate medical attention and treatment." (Complaint ¶¶9-10). On these allegations he claims violation of his Fourth Amendment and Eighth Amendment protections to be free from the use of excessive force. (Complaint ¶23).

Defendants claim that Phelps' own deposition testimony indicated there was nothing but accidental injury. Defendants point out that Phelps stated in deposition that Pickett "gently" placed his hands behind his back and when "Officer Pickett went to guide me to the cruiser that's when he yanked up on my arm and tried to hurry up and get me into the cruiser." (Phelps Dep. pg. at 52). Further, Phelps testified that he bumped his head on the cruiser, but that was "an accident" because Officer Pickett turned his head to focus on Phelps' neighbor, James Walden (who was issued a summons for having an open container). (Pickett Aff. ¶12). Defendants admit that Phelps told Officer Pickett  he had previously injured his shoulder in a car accident but claim this statement was made simultaneously with Officer Pickett raising Phelps' arms (Phelps Dep. pg. 29, 52).

Phelps states that after he was handcuffed and Officer Pickett pulled his arms up, he heard a snap of his shoulder and told Officer Pickett that "it's hurting"  (Phelps' Dep. at 27, 30-37). Phelps claims he complained after he was in the back of the cruiser that his shoulder was hurt and that Officer Pickett told him to "shut up." (Dep. at 29-30). Phelps elaborated that Officer Pickett "just yanked up on me" and "got me into the cruiser" but he did not know whether Officer Pickett acted intentionally. (Phelps Dep. at 52). Officer Pickett again pulled on Phelps' shoulder to pull him out of the cruiser causing Phelps more pain (Phelps Dep. at 37). Phelps testified that he

5:04 CV 2490                                          12

immediately went to the Akron General Medical Center Emergency where he was diagnosed with left shoulder strain (Phelps Dep. at 71).  He stated that his arm was placed in a sling "because my shoulder was swelling and he [the doctor] wanted the swelling to go down."  *Id.*  He was also told not to keep the arm in a sling and that he needed to start moving his arm.  *Id.*

Phelps does not attempt to contradict how his arm was injured but he augments defendant's version of events claiming that he informed Officer Pickett that he was hurt and needed to go to the hospital.  But to do this, he relies on affidavits submitted by him and his neighbor James Walden.  It is well established, however, that a plaintiff may not create a factual issue by filing an affidavit after a motion for summary judgment has been made which contradicts his earlier deposition testimony.  See *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).  Further, Phelps complains that the defendants only submitted certain portions of his deposition.  Phelps certainly was free to submit other portions and he could not simply submit an affidavit which conflicts with his previous deposition testimony.

The undisputed facts show that prior to the arrest of Phelps, Officer Pickett was alone in his police cruiser patrolling an apartment complex in response to citizens' complaints of criminal activity including motor vehicle thefts.  At approximately 1:20 a.m. he observed Phelps leaning on a parked car that was in the rear parking lot of the apartment complex.  Phelps claims his neighbor was helping him jump his truck.  Two additional individuals were observed with Phelps, his neighbor James Walden and later after the officers arrived (Pickett Dep. 51) Phelps' fiancee, both

of whom were in the vehicles. (Phelps disputes this and claims both Mr. Walden and his fiancee were out in the cold jump-starting his truck). Concerned about his safety, Officer Pickett notified the dispatcher of his location and requested backup officers. Phelps appeared to be intoxicated to Office Pickett.

Officer Pickett was in a less than secure environment and was confronting an individual who to him appeared to be intoxicated together with two other individuals in what could have been interrupted drug activity. As defendants point out, "where an officer suspects drug activity, you can reasonably infer that the suspect is armed and dangerous." *U.S. v. Akinyemi*, 101 Fed. Appx. 109 (6th Cir. June 11, 2004). Officer Pickett was also concerned with Phelps' continuous motioning with his hands and Mr. Walden's activities in a parked vehicle. (Phelps concedes that he was moving his hands (Phelps Dep. at 24).

Officer Pickett contends that Phelps attempted to walk away. This statement is inconsistent with Officer Pickett's deposition testimony that Phelps walked toward him when called (Pickett Dep. pg. 55, 76). Officer Pickett also denies that Phelps complained about shoulder injury or heard a popping sound when he raised Phelps' arms (Pickett Dep. pg. 77-78). Officer Pickett contradicts Phelps when he states that Phelps only complained that his handcuffs were too tight (Pickett Dep. pg. 77). Phelps denies that he complained about his handcuffs (Phelps Dep. pg. 30).

Granted, the actual charges were minor, but the officer had reasonable concerns that he was confronting auto theft or drug activity. That would justify handcuffing Phelps while he ran LEADS.

5:04 CV 2490                                            14

However, that does not explain a need to injure Phelps' left shoulder.  Phelps went to the hospital on the same day of his confrontation with Officer Pickett.  At that point in time, the marijuana pipe had been seized and there was no reason to manhandle Phelps when Officer Pickett did not testify that Phelps was resisting, except for gesturing with his hands and placing them in his pockets (Pickett Dep. pg. 72).  The Fourth Amendment allows officers only the degree of force necessary to effect arrest.  *Monday v. Oullette*, 118 F.3d 1099, 1102 (6ᵗʰ Cir. 1997.

The facts are in dispute and defendants have not articulated any overriding legal principle to resolve whether Officer Pickett used gratuitous and excessive force under the circumstances, especially considering the Officer's testimony is not altogether consistent with defendants' arguments.  Accordingly, summary judgment cannot be entered on this claim.

*Denial of Medical Attention:*

Denial of medical care has both a Fourth and Fourteenth Amendment component.  *Boone v. Spurgess*, 385 F.3d 923, 933 (6ᵗʰ Cir. 2004).  *Boone* points out that in *Graham* the "excessive force claim was partially based on the officers' refusal to provide medical care to a handcuffed suspect suffering from a diabetic attack."  *Id.*, 385 F.3d 933; *Graham*, 490 U.S. at 389-90.  Under the Fourteenth Amendment denial of due process clause, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners.  See *Watkins v.*

5:04 CV 2490                                          15

*City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001); *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003) ("The Eighth Amendment does not apply to pretrial detainees.").


In response to Phelps' complaints of pain, Officer Pickett removed the handcuffs.  But for Fourth Amendment purposes, Officer Pickett's actions may not have been objectively reasonable. See *Boone*, 385 F.3d at 934.  For purposes of the Fourteenth Amendments due process right of pretrial detainees to adequate medical care, the standard is whether there has been "deliberate indifference" to a serious illness or injury.  See *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Weaver*, 340 F.3d at 410.   There is both a subjective and objective component.  Analysis under this format requires consideration of both the objective and subjective components.  See *Blakemore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004); *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).   Under the subjective component, "the official must be both aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer* at 837; *Weaver*, 340 F.3d at 410.  Deliberate indifference is something more than negligence.  *Farmer*, 511 U.S. at 835; *Weaver*, 340 F.3d at 410.  With respect to the objective factor, a medical need must be objectively serious so that it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blakemore*, 390 F.3d at 897;  *Owensby v. City of Cincinnati*, 414 F.3d 596, 604 (6th Cir. 2005).  Phelps' deposition testimony, if true, would indicate that Officer Pickett was aware of the injury, yet pulled on his arm again despite Phelps' claims he actively demonstrated his pain. Summary judgment cannot be entered on this claim.

5:04 CV 2490                                         16

*Qualified Immunity:*

As recently explained in *Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004), that "[w]hen confronted with a claim of qualified immunity, a court must first ask the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

The Fourth Amendment protection against unnecessary force is well established and there can be no qualified immunity, taking Phelps' allegations as true for his rough handling.  See *Riviera v. U.S.*, 928 F.2d 592, 607 (2nd Cir. 1991) (unnecessary rough handling); *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993) (suspect had injured arm and posed no threat to officer); *Turek v. Saluga*, 47 Fed. Appx. 746 (6th Cir. Sep. 24, 2002) (modifying *Walton* to add *Saucier*'s reasonableness inquiry).

*Failure to Train:*

Failure to train is a situation in which a municipality can be held liable in a civil rights action under §1983 for constitutional violations resulting from a failure to train municipal employees.  See *City of Canton, Ohio v. Harris*, 49 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  Inadequacy of police training may serve as a basis for §1983 liability that occurs only when the failure to train amounts to deliberate indifference to the rights of persons with whom the police have come into contact.  *Id.*, 489 U.S. at 388.  With respect to municipal liability aside from failing to establish a

5:04 CV 2490                                    17

policy or "custom" to subject the City of Akron to liability, this isolated incident does not reflect a conscious disregard of any federally protected rights.  See  *Board of County Com'rs of Bryan County, Okl v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *City of St. Louis v. Praprotnik*, 45 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (isolated actions by municipal officers who have "final policy making authority" may subject municipal government to §1983 liability).

Phelps mingles his improper investigation argument with his failure to train argument.  His only "evidence" is that Officer Pickett's belief that he is always in danger from anyone he comes into contact demonstrates failure to adequately train.  (Opposition pg. 37, ECF#53).  This does not show a failure to train, but only an isolated incident.  Summary judgment will be entered in favor of defendants on this claim.

*Respondeat Superior and Failure to Investigate:*

It is well established that supervisory personnel cannot be subjected to *respondeat superior* liability in a §1983 action.  See *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Hays v. Jefferson County*, 668 F.2d 869, 872-74 (6th Cir. 1982); *Monell v. Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  It is possible, however, to establish municipal liability for its inaction in terms of failure to investigate.  See *Doe v. Claiborne County, Tenn.*, 103 F.3d 495 (6th Cir. 1996).  To meet this burden, Phelps must establish a "clear and consistent pattern" of constitutional violations by police officers, notice or constructive notice on the part of the investigative body and that body's tacit approval of the unconstitutional conduct "such that their

5:04 CV 2490                                            18

deliberate indifference and their failure to act can be said to amount to an official policy of inaction."

And that the custom was the "moving force" or "direct causal link" in the constitutional deprivation.

*Doe*, 103 F.3d at 508; *City of Canton*, 489 U.S. at 388-89.  It is not enough to show that defendant

supervisors were sloppy, reckless or negligent in the performance of their duties.  *Doe ex rel. Doe*

*v. City of Roseville*, 296 F.3d 431, 439 (6th Cir. 2002).  Obviously Phelps cannot show that his

allegations of the failure to respond to his complaint against Officer Pickett was the moving force

concerning the events complained of.   Phelps further alleges in paragraph 12 of the complaint that

after he complained about such conduct, defendants proceeded to prosecute him for a crime that they

did not have reasonable belief that he committed in order to justify the stop, seizure, and intrusion

of plaintiff.


However a municipality may acquiesce in unconstitutional conduct as established by

ratification by municipal policymakers.  *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994);

*Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246-48 (6th Cir. 1989); *Marchese v. Lucas*, 758

F.2d 181, 188 (6th Cir. 1985); *Wright v. City of Canton*, 138 F.Supp.2d 955, 966 (N.D. Ohio 2001);

*Otero v. Wood*, 316 F.Supp.2d 612, 27-28 (S.D. Ohio 2004).


Defendants have put forth that there was an investigation, and that it exonerated Officer

Pickett.  Phelps merely complains of a conflict of interest in having a direct supervisor conduct it

considering Sgt. Simcox's presence on the scene as one of the back-up officers.  These facts alone

do not establish that the investigation was inadequate.  However, the evidence that Sgt. Simcox

made no effort to contact anyone other than Officer Pickett demonstrates a lack of any meaningful

5:04 CV 2490                                    19

investigative process.  (See Simcox Dep. pg. 46-47, 64) (no witness contacted), pg. 41, 44, 53-54 (only spoke to Officer Pickett).

Phelps can establish municipal liability by showing "(1) a final policymaker approved an investigation into [police conduct], (2) that was so inadequate as to constitute a ratification of their alleged use of excessive force.  *Wright*, 138 F.Supp.2d at 966.  Phelps has demonstrated this case and summary judgment cannot be entered.

However, for Officer  Pickett's superiors to be liable personal acquiescence is necessary. This has arguably only been demonstrated with regard to Sgt. Simcox based also on his conduct of the investigation and his direct supervision over Officer Pickett.

*Conspiracy:*

Phelps claims Officers Pickett, Simcox and the other defendants conspired to refuse or fail to investigate the citizen's complaint and to prosecute Phelps (Complaint ¶12).  Since all alleged participants were employees of the same governmental entity the intra-corporate conspiracy doctrine bars this claim because the City of Akron is considered one-entity.  See *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 509 (6th Cir. 1991).  Accordingly, summary judgment for the defendants on this claim.

5:04 CV 2490                                    20

## *CONCLUSION*

Defendants' motion for summary judgment is granted in part to dismiss plaintiff's claims of wrongful stop, unlawful seizure regarding his arrest, malicious prosecution, unlawful seizure of the marijuana pipe, failure to train, and *respondeat superior*, but is denied in part on plaintiff's claims of unreasonable and excessive force, denial of medical attention, and failure to investigate. Summary judgment is also denied on defendant's claim of qualified immunity.

        s/James S. Gallas
        United States Magistrate Judge

Dated: October 13, 2006